Howard **HYDEN**, Plaintiff–Appellant,

v.

**FARMERS INSURANCE EXCHANGE,**
Defendant–Appellee.

No. 99CA1731.

Colorado Court of Appeals,
Div. IV.

Sept. 14, 2000.

Rehearing Denied Oct. 12, 2000.

Certiorari Denied April 16, 2001.

Shakeshaft, Chernushin & Donohoe, P.C., Kenneth J. Shakeshaft, Colorado Springs, Colorado, for Plaintiff–Appellant

Levy & Lambdin, P.C., Karen H. Wheeler, L. Kathleen Chaney, Englewood, Colorado, for Defendant–Appellee

Opinion by Judge DAILEY.

In this automobile insurance case, plaintiff, Howard Hyden, appeals the summary judgment and award of costs entered in favor of defendant, Farmers Insurance Exchange (Farmers). We affirm in part and reverse in part.

### I. Background

In October 1995, plaintiff, while driving his 1993 Jeep Cherokee, was hit by another car. Although plaintiff considered his Jeep totaled and did not want it repaired, his insurance company, Farmers, had it repaired anyway, at a cost of $16,868.96.

A sales manager of a Jeep dealership opined that the estimated value of plaintiff's

Jeep after repairs was no more than $7500, as compared to the approximately $23,000 plaintiff claimed the Jeep was worth prior to the accident. Consequently, plaintiff initiated this action against Farmers for breach of contract and bad faith breach of an insurance contract. Farmers counterclaimed, seeking a declaratory judgment that it had satisfied its obligations under its insurance policy with plaintiff.

Farmers moved for summary judgment on both the plaintiff's claims and its own counterclaim, arguing that, under the policy, it had sole discretion to choose whether to repair or replace plaintiff's Jeep; that it was only obliged to provide plaintiff with a comparably functioning Jeep; and that plaintiff was, in any event, barred from bringing suit because he had subsequently had the Jeep repaired further without allowing Farmers to first inspect it.

The trial court granted Farmers' motion for summary judgment, concluding that there were "no genuine issues of material fact with regard to the Defendant's liability to the Plaintiff."

## II. Standards of Review and Principles of Insurance Contract Interpretation

We review *de novo* an order granting summary judgment. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

Summary judgment is a drastic remedy and should be granted only when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Werne v. Brown,* 955 P.2d 1053 (Colo.App. 1998). We must resolve all doubts as to whether an issue of fact exists in favor of the non-moving party. *See Mancuso v. United Bank,* 818 P.2d 732 (Colo.1991).

Here, the trial court concluded that any facts in dispute were not "material" because, under the terms of the policy, either Farmers was obligated only to restore the Jeep to functioning capacity or plaintiff had waived the right to sue Farmers when he sought further repairs without cooperating with Farmers. The validity of the trial court's ruling, then, depends upon whether it correctly interpreted the terms of the policy.

Ultimately, the interpretation of an insurance policy is an issue of law which we review *de novo. Colonial Insurance Co. v. American Hardware Mutual Insurance Co.,* 969 P.2d 796 (Colo.App.1998).

An insurance policy is a contract which should be construed to give effect to the intent of the parties. *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545 (Colo.App.1993). Unless there is an ambiguity, an insurance policy should be enforced as written. *Bengtson v. USAA Property & Casualty Insurance,* 3 P.3d 1233 (Colo.App.2000).

A contract term is ambiguous if it is susceptible of more than one reasonable meaning. *Branscum v. American Community Mutual Insurance Co.,* 984 P.2d 675 (Colo.App.1999). If a term is susceptible of more than one reasonable meaning, it must be construed against the insurance company and in favor of the insured. *State Farm Mutual Automobile Insurance Co. v. Stein,* 940 P.2d 384 (Colo.1997).

## III. Construction of Farmers' Insurance Policy

We agree with Farmers that the policy language stating Farmers "will pay the loss in money or repair or replace" damaged property gave it the option to repair or replace plaintiff's Jeep. *See State Farm Mutual Automobile Insurance Co. v. Dodd,* 276 Ala. 410, 162 So.2d 621 (1964)(language stating "the company may pay for the loss in money or may repair or replace the automobile" gave insurer discretion to either pay, repair, or replace vehicle).

Once having made the choice, however, Farmers was responsible, under the terms of the policy, for providing plaintiff with a vehicle "of like kind and quality" and it would not be immune from suit unless plaintiff violated the "cooperation" clauses of the policy. It is to these matters that we now turn.

## A. Of Like Kind and Quality

Farmers argues that it complied with the "of like kind and quality" language when it had plaintiff's Jeep repaired to a point where it functioned as it did before the accident. Plaintiff argues that the language requires, in addition, that the repaired Jeep have a fair market value similar to that which it had prior to the accident. We agree with plaintiff.

Initially, we note that, during oral argument, Farmers explained that the "of like kind and quality" phrase obliged it only to return the Jeep to plaintiff in "substantially the same condition as it was before the accident." Yet, according to one leading commentator, "A vehicle is not restored to substantially the same condition if repairs leave the market value of the vehicle substantially less than the value immediately before the collision." L. Russ, *Couch on Insurance 3D* § 175:47 at 175–54 (1998). We agree with this commentator.

■ The phrase "of like kind and quality" does not, in our view, unambiguously support Farmers' position that it was obligated only to restore plaintiff's Jeep to a functioning capacity. Indeed, the term "quality" can have a meaning different from the word "kind," *Webster's Ninth New Collegiate Dictionary* 661 & 963 (1991), and it often conveys "a degree of excellence" or "a superiority in kind." *Webster's Ninth New Collegiate Dictionary* 963 (1991). Because the words "kind" and "quality" are joined together by "and" rather than by "or," ordinary purchasers of insurance could reasonably expect Farmers to provide them with vehicles substantially equivalent in both function *and* value to those which they drove prior to any accidents.

In our view, the phrase "of like kind and quality" is ambiguous because it fails to specify the protections afforded by the policy. Accordingly, it must be construed in favor of plaintiff and against Farmers. *See State Farm Mutual Automobile Insurance Co. v. Stein, supra* (public policy requires insurers to disclose fully and fairly to insureds what insurance protection is being provided for premium charged); *State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165, 167 (Colo.1993)("[t]he objectively reasonable expectations of applicants ... regarding the terms of insurance contracts will be honored....").

Other courts which have addressed an insurer's obligation to repair, or replace with, a vehicle of "like kind and quality" have found the obligation violated if repairs leave the vehicle's market value substantially less than the market value it had immediately before the accident. *See Boyd Motors, Inc. v. Employers Insurance,* 880 F.2d 270 (10th Cir.1989)(applying Kansas law); *Delledonne v. State Farm Mutual Automobile Insurance Co.,* 621 A.2d 350 (Del.Super.Ct.1992); *United States Fire Insurance Co. v. Welch,* 163 Ga.App. 480, 294 S.E.2d 713 (1982); *Campbell v. Calvert Fire Insurance Co.,* 234 S.C. 583, 109 S.E.2d 572 (1959); *Northwestern National Insurance Co. v. Cope,* 448 S.W.2d 717 (Tex.Civ.App.1969). *But see Johnson v. State Farm Mutual Automobile Insurance Co.,* 157 Ariz. 1, 754 P.2d 330 (Ariz.App. 1988)("like kind and quality" contemplates restoration of physical condition rather than restoration of value); *Ray v. Farmers Insurance Exchange,* 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988)(same); *General Accident Fire & Life Assurance Corp. v. Judd,* 400 S.W.2d 685 (Ky.1966)(same).

■ Consequently, we hold that when an automobile insurer promises to provide an insured with a vehicle "of like kind and quality," the insurer must provide the insured, through repair, replacement, and/or compensation, the means of acquiring a vehicle substantially similar in function and value to that which the insured had prior to his or her accident.

In this case, there is a genuine issue of material fact as to whether this has occurred.

## B. Cooperation Clauses

Plaintiff argues he was not barred from bringing this action by the policy's "cooperation" clauses. We agree.

The record reflects that, following the accident, the Jeep was taken to one of Farmers' preferred repair shops. At some point—at the very latest, approximately two and a half

months later—plaintiff notified Farmers that he wished to be compensated for the diminished value of the Jeep if it was repaired and returned to him. The repaired Jeep was returned to him, four months after it had been left at the shop, and only after Farmers itself had inspected the Jeep and assured plaintiff that it was "perfect."

Plaintiff had not wanted to take the Jeep back, and within two weeks of its return he met with several Farmers' officials to discuss whether he could obtain either a new Jeep or compensation for the diminished value of his repaired Jeep. At that time, plaintiff took those officials for a ride to demonstrate the shortcomings of the supposedly repaired Jeep. Although the Farmers' officials indicated they would get back to him about his request, they never did so. Having received no response to his request for compensation for the diminished value of the Jeep, he had further repairs done on the Jeep at other shops.

Farmers requested that plaintiff bring the Jeep back to its preferred shop for further repairs. Plaintiff did not do so, because he had no confidence in that shop's ability to fix the Jeep's problems. He also believed that the shop could not, through further repairs, restore the Jeep to even its former trade-in value.

Farmers argues here, as it did in the trial court, that, under the terms of the policy, plaintiff was barred from bringing this action because he refused to return the Jeep to Farmers' preferred shop for further inspection, appraisal, and repairs.

The clauses of the policy upon which Farmers relies state that Farmers "may not be sued unless there is full compliance with all the terms of this policy" and that

A person claiming any coverage of this policy must also:

1. Cooperate with us and assist us in any manner concerning a claim or suit [and]

. . . .

7. If claiming car damage coverage ... [a]llow us to inspect and appraise the damaged vehicle prior to its repair or disposal.

We conclude that these clauses do not prohibit plaintiff's present action.

■ Significantly, plaintiff does not claim coverage for the expenses he incurred repairing the Jeep after it was returned to him. Rather, he claims coverage only for the diminution in the Jeep's fair market value as of the time the Jeep was returned to him.

It is undisputed that plaintiff cooperated fully with Farmers for the four months it took to initially repair the Jeep after the accident; and, that Farmers itself inspected the Jeep—and deemed it "perfect"—before it was returned to plaintiff.

There is no indication in the record that Farmers was willing (or even able) to continue fixing the Jeep until its pre-accident market value had been substantially restored. Indeed, its position throughout was that, at most, it would restore the Jeep only to normal operational functions.

There is no evidence that further cooperation by plaintiff would have been productive, with respect to the claim for coverage he was asserting. Consequently, we conclude that plaintiff satisfied the cooperation clauses of the policy, for purposes of allowing him to proceed with this action.

### IV. Disposition of Plaintiff's Contract/Tort Claims

■ Our interpretation of the policy and plaintiff's evidence of the diminution in value of his Jeep lead us to conclude that the trial court erred in granting summary judgment against plaintiff on his breach of contract claim.

We agree, however, with the trial court's summary judgment against plaintiff on his claim of bad faith breach of insurance contract.

■ In order to establish the tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness. *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545 (Colo.1997).

Although plaintiff presented evidence that Farmers may have acted unreasonably in handling his claim, he failed to present any evidence in support of the second prong of the bad faith breach test.

Plaintiff presented the statement of an experienced insurance claims adjuster to the effect that he believed Farmers' conduct was reckless. However, this conclusion was not supported by factual assertions, and even the basis of his opinion regarding Farmers' unreasonableness is undermined by our holding that Farmers, rather than plaintiff, had the right to choose whether to repair or replace the vehicle.

Plaintiff points to no other evidence to demonstrate that Farmers acted knowingly or recklessly with regard to its alleged unreasonableness. And, Farmers did pay $16,868.96 in an effort to repair plaintiff's vehicle.

Thus, there is no evidence that could support the second prong of the test for bad faith breach of insurance. Consequently, the trial court did not err in granting summary judgment for Farmers on this claim.

Accordingly, the judgment in favor of defendant on the breach of contract claim is reversed, and the cause is remanded for further proceedings on that claim consistent with the views expressed in this opinion. The remainder of the judgment is affirmed.

Judge MARQUEZ and Justice ERICKSON * concur.