Norman S. DE RUYTER, Plaintiff-Appellant†,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 03–2580. Submitted on briefs June 2, 2004.—Decided
July 7, 2004.*

2004 WI App 162

(Also reported in 686 N.W.2d 736.)

† Petition to review denied 9-16-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas C. Koessl* of *Williams, Montgomery & John, Ltd.* of Chicago, Illinois, and *Patrick J. McGuire, P.C.* of *Law Offices of Patrick J. McGuire*, of Chicago, Illinois.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Earl H. Munson* and *Catherine M. Rottier,* of *Boardman, Suhr, Curry & Field, LLP,* of Madison.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Norman S. DeRuyter appeals from an order dismissing his complaint against his insurer, American Family Mutual Insurance Company, for failure to state a claim. DeRuyter's complaint alleged breach of contract, bad faith and unjust enrich-

ment based on American Family's proposed use of aftermarket or salvaged parts, as opposed to new, original equipment manufacturer ("OEM") parts, to repair DeRuyter's vehicle after a collision. DeRuyter alleged that American Family's policy did not contain a provision that limits its liability to the cost of non-OEM parts and that American Family intentionally conceals this limitation on benefits until after an insured has suffered a loss and a claim is made.

¶ 2. We conclude that the language of the policy as a whole is sufficient to alert a reasonable person that American Family will restore a vehicle to pre-collision condition and that non-OEM parts might be used in doing so. We therefore uphold the circuit court's order dismissing DeRuyter's complaint.

## BACKGROUND

¶ 3. When a case is before us on the circuit court's order dismissing the complaint for failure to state a claim pursuant to WIS. STAT. § 802.06(2) (2001–02),[1] we accept the facts alleged in the complaint as true for purposes of our review. *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶ 5, 254 Wis. 2d 347, 646 N.W.2d 365. Because the insurance policy was attached to the complaint, we consider the policy in addition to the allegations of the complaint. WIS. STAT. § 802.04(3).

¶ 4. At all relevant times, DeRuyter was a named insured under a policy of automobile insurance issued by American Family. The American Family policy issued to DeRuyter provides in relevant part:

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

# PART IV - CAR DAMAGE COVERAGES

**We** will pay for **loss** under the following coverages, less the deductible, if the coverage is shown in the declarations.

. . . .

## 2. Collision Coverage

Under this coverage **we** pay for **loss** due to the collision of **your insured car** with another object or upset of **your insured car** . . . .

. . . .

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

**1. Loss** means direct and accidental loss of or damage to **your insured car** and its equipment.

. . . .

## EXLUSIONS

This coverage does not apply to **loss**:

. . . .

7. Resulting from wear and tear . . . . But, coverage does apply if the **loss** results from the total theft of **your insured car**.

. . . .

## LIMITS OF LIABILITY

**Our** limit of liability for **loss** shall not exceed the least of:

1. The actual cash value of the stolen or damaged property.

700

2. The amount necessary to repair or replace the property.

3. The decrease in value of the damaged property caused by the **loss**.

¶ 5. On January 9, 2001, DeRuyter's vehicle was involved in a collision with another vehicle insured by American Family. DeRuyter timely reported the loss and made a claim for the cost of necessary repairs to American Family under his own policy of insurance. DeRuyter's claim included the cost of having his vehicle repaired using new, OEM parts. Following the loss, American Family inspected the vehicle and wrote its own estimate of repair costs which was based, in part, on the cost of aftermarket replacement parts. It was only upon receipt of American Family's estimate of repair costs that DeRuyter learned that American Family would only pay for the cost of using certain non-OEM parts in the repairs. At the time of the estimate, American Family provided DeRuyter with a brochure entitled "Responsible Auto Care," which explained American Family's practice regarding the use of aftermarket parts and described how American Family intended to pay for the repairs to the vehicle. DeRuyter alleged that the brochure contradicted and limited American Family's policy by stating that the policyholder would be responsible for the cost of repairs using OEM parts. American Family refused to pay for the cost of repairs to DeRuyter's vehicle using only OEM parts.

¶ 6. DeRuyter responded with the instant action against American Family.[2] DeRuyter alleged causes of action grounded in breach of contract, bad faith in

---

[2] DeRuyter initially commenced this action in Kenosha county although he resides in Sheboygan county. American

handling claims and unjust enrichment.[3] American Family filed a motion to dismiss DeRuyter's action for failure to state a claim based on its contention that DeRuyter was not entitled to demand repair with only new OEM parts. The parties submitted briefs and, following oral arguments, the circuit court issued a written order dismissing DeRuyter's complaint for failure to state a claim.

¶ 7. DeRuyter appeals.

## DISCUSSION

¶ 8. The question of whether the circuit court properly dismissed the complaint for failure to state a claim is a question of law that we review de novo. *Bammert*, 254 Wis. 2d 347, ¶ 8. Here, the parties dispute the terms of DeRuyter's insurance policy issued by American Family.[4] The interpretation of an insurance contract is a question of law that this court decides

---

Family filed a motion for change of venue. The circuit court granted the motion and the case was transferred to Sheboygan county in February 2003.

[3] DeRuyter's complaint additionally moved for class certification pursuant to WIS. STAT. § 803.08. American Family subsequently moved to defer consideration of DeRuyter's request pending the resolution of procedural and dispositive motions. The matter was not further addressed prior to the circuit court order dismissing DeRuyter's complaint for failure to state a claim.

[4] Although DeRuyter's complaint additionally alleged bad faith and unjust enrichment, the parties agree that the viability of those claims hinge on DeRuyter's breach of contract claim. Because we conclude that the circuit court properly dismissed DeRuyter's breach of contract claim, we need not address his arguments as they pertain to his remaining claims.

without deference to the trial court. *Landshire v. Emp. Mut. Cas. Co.*, 2004 WI App 29, ¶ 9, 269 Wis. 2d 775, 676 N.W.2d 528, *review denied,* 2004 WI 50, 271 Wis. 2d 111, 679 N.W.2d 546 (Wis. Apr. 20, 2004) (No. 03–0896).

> In Wisconsin, the construction of contracts of insurance should be made with an aim toward effecting the true intent of the parties and the extent of policy coverage. The test "is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood them to mean." When a policy is clear and unambiguous on its face, the terms of that policy should not be rewritten by construction to bind an insurer to a risk it never contemplated or was willing to cover, and for which it was never paid. However, when the terms of the policy are ambiguous or obscure, the policy must be strictly construed against the drafter of the policy, the insurance company. Words or phrases in a contract are ambiguous when they are "reasonably or fairly susceptible to more than one construction."

*Id.*, ¶ 11 (citation omitted). Bearing these principles in mind, we turn to DeRuyter's challenges to American Family's policy.

■

¶ 9. DeRuyter first argues that American Family's policy unambiguously provides for the repair of the vehicle with new OEM parts without limitation or exclusion. DeRuyter's argument is premised on the policy language which expressly states that American Family will pay for all loss or damage to the insured vehicle above the deductible amount listed on the policy's declaration page. DeRuyter contends that this language permits a reasonable expectation that a vehicle would be repaired following a covered loss with new OEM parts at no cost to the insured.

¶ 10. Our focus in determining whether American Family's policy is ambiguous is not dictated by whether the parties disagree about the meaning of a particular word or phrase; a word or phrase may be unambiguous if the court concludes that only one meaning applies in the context and comports with the parties' objectively reasonable expectations. *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 537, 514 N.W.2d 1 (1994). Here, we disagree with DeRuyter that American Family's policy unambiguously provides for repair using new, OEM parts. To the contrary, we conclude that an objective person in DeRuyter's position would have understood the policy terms to clearly and unambiguously provide exactly what it states: coverage in "[t]he amount necessary to repair or replace the property."

¶ 11. Looking at the policy as a whole, we observe that the American Family policy covers "loss due to collision." It defines "loss" as "direct and accidental damage to your insured car" and expressly excludes "loss related to wear and tear." In addition, the policy limits American Family's liability to the least of: (1) the cash value of the vehicle, (2) the amount necessary to repair or replace it, or (3) the decrease in value of the damaged vehicle caused by the loss. Here, the parties do not dispute that American Family was entitled to invoke the second of these limitations—the amount necessary to repair or replace the loss.

¶ 12. The damaged property in question in this case was the front bumper of a 1997 Buick Regal with 100,000 miles.[5] American Family's estimate of repair

---

[5] DeRuyter's vehicle additionally sustained damage to the grill, headlamps, fenders and hood, however, American Family's estimate did not propose the use of aftermarket parts to repair these damages.

provided that a "quality replacement part" would be used to repair the front bumper. DeRuyter's front bumper, at the time of the accident, was four years old. This court has previously recognized that "[t]he common and ordinary meaning of 'repair' is 'restore by replacing a part or putting together what is torn or broken' " and that "[r]epair is not ordinarily understood to mean to restore to pre-broken or pre-collision market value." *Wildin v. American Fam. Mut. Ins. Co.*, 2001 WI App 293, ¶ 9, 249 Wis. 2d 477, 638 N.W.2d 87 (citation omitted). Significantly, DeRuyter does not allege that the use of a replacement part would not have restored his vehicle to its pre-collision or pre-loss condition. Based on the language of American Family's policy, a reasonable insured could have expected coverage for only the loss due to the collision, whether or not the repairs required the use of OEM parts. The insured could not reasonably have expected coverage for loss resulting from the wear and tear of the vehicle's use prior to the collision.

¶ 13. DeRuyter contends that the American Family policy fails to comply with WIS. STAT. § 631.45 because it does not contain clear language limiting its liability to the cost of non-OEM or aftermarket parts so that a policyholder would be on notice that he or she may have to bear a portion of the loss over and above the deductible. Section 631.45 provides in relevant part that "[a]n insurance policy indemnifying an insured against loss may by clear language limit the part of the loss to be borne by the insurer . . . ." However, DeRuyter's argument assumes that the use of non-OEM parts is a limitation of liability above and beyond the policy's stated limitation of liability for loss to "[t]he amount necessary to repair or replace the property." The specific loss at issue here is that of a four-year-old

front bumper. DeRuyter fails to demonstrate how the use of a non-OEM bumper would result in a failure to repair his vehicle as contracted under the terms of the policy. We reject DeRuyter's contention that American Family's practice of using non-OEM parts when appropriate is a limitation of liability above and beyond those stated in its policy.

¶ 14. DeRuyter contends that American Family could have avoided this dispute had its policy contained a "like kind and quality" clause. DeRuyter cites to recent cases from other jurisdictions in which the insurance policies at issue contained the clause "like kind and quality" to notify their insureds of the use of non-OEM or salvaged parts in the adjustment of claims. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242, 1247–48 (Ill. App. 2001) (parts will be of "like kind and quality"); *Augustus v. The Progressive Corp.*, 2003 WL 155267 (Ohio App. 2003).[6] However, neither case demonstrates that the use of this particular phrase in and of itself renders a policy unambiguous or that the

---

[6] In *Avery v. State Farm Mutual Auto. Insurance Co.*, 746 N.E.2d 1242, 1256, 1259 (Ill. App. 2001), although the insurance policy provision stated that it would pay for replacement parts of "like kind and quality" that would restore the vehicle to its "pre-loss condition," the court nevertheless upheld a jury's award of damages based on its finding that the insurance company had breached its promise by uniformly specifying non-OEM parts when they were available and cheaper than OEM parts. In *Augustus v. The Progressive Corp.*, 2003 WL 155267 (Ohio App. 2003), the issue on appeal was whether the action met the requirements of a class action and did not focus on the use of the phrase "like kind and quality." Although the *Augustus* court did note that the use of non-OEM parts was not at issue since the policy expressly stated that "like kind and quality" may include non-OEM parts, it narrowed the issue to whether the company-wide policy of using non-OEM vehicles

absence of the phrase renders a policy ambiguous. In fact, another case, *Foultz v. Erie Insurance Exchange*, 2002 WL 452115, at *9 n.18 (Pa. Com. Pl. 2002), suggests that the clause has not had the clarifying effect for which DeRuyter argues.[7] And at least one other case suggests that the use of the words "like kind and quality" without an express provision for the use of non-OEM parts, provides an argument that a non-OEM part is simply not of "like kind and quality" to an OEM part. *See Snell v. Geico Corp.*, 2001 WL 1085237 (Md. Cir. Ct. 2001) (plaintiffs arguing that non-OEM parts are necessarily and uniformly inferior to OEM parts and are not of "like kind and quality"). We reject DeRuyter's argument that American Family's failure to incorporate a "like kind and quality" clause renders the

without considering the particular vehicle in question breached the contract which promised to restore a vehicle to its "pre-loss condition." *Id.*, at *1, *4.

[7] In *Foultz v. Erie Insurance Exchange*, 2002 WL 452115, at *9 n.18 (Pa. Com. Pl. 2002), the court said:

The term "like kind and quality" has been held to be ambiguous by some, but not all, courts. *Compare Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1225 (Colo. Ct. App. 2000) ("[T]he phrase 'of like kind and quality' is ambiguous because it fails to specify the protections afforded by the policy."), *Bellefonte Ins. Ct. v. Griffin*, 358 So.2d 387, 390 (Miss. 1978) (holding "like kind and quality" repair provision to be ambiguous), *and Cazabat v. Metropolitan Prop. & Cas. Ins. Co.*, No. C.A. KC99–0544, 2000 WL 1910089, at *3 (R.I. Super. Ct. Apr. 24, 2000) ("Like kind and quality" is "ambiguous as it is susceptible to more than one reasonable interpretation."), *with Great Am. Ins. Co. v. Railroad Furniture Salvage of Mobile, Inc.*, 162 So.2d 488, 494 (Ala. 1964) ("Like kind and quality" provision was "certain and free from ambiguity."), *Siegle v. Progressive Consumers Ins. Co.*, 788 So.2d 355, 361 (Fla. Dist. Ct. App. 2001) (finding no ambiguity in "like kind and quality" provision), *and Custom Controls Co. v. Ranger Ins.*, 652 S.W.2d 449, 452 (Tex. Ct. App. 1983) (concluding that "like kind and quality" provision was not ambiguous).

policy unclear and ambiguous, or that the use of such a clause would have rendered the policy clear and unambiguous. We therefore see no reason to confuse the issue by considering language which the American Family policy could have used but did not.

¶ 15. Finally, DeRuyter contends that the trial court erred in its determination that WIS. STAT. § 632.38 permits the use of non-OEM, aftermarket parts. Section 632.38, enacted by the legislature in 1991, governs the use of "nonoriginal manufacturer replacement parts." It provides in relevant part:

(2) NOTICE OF INTENDED USE. An insurer or the insurer's representative may not require directly or indirectly the use of a nonoriginal manufacturer replacement part in the repair of an insured's motor vehicle, unless the insurer or the insurer's representative provides to the insured the notice described in this subsection in the manner required in sub. (3) or (4). The notice shall be in writing and shall include all of the following information:

(a) A clear identification of each nonoriginal manufacturer replacement part that is intended for use in the repair of the insured's motor vehicle.

(b) The following statement in not smaller than 10–point type: "This estimate has been prepared based on the use of one or more replacement parts supplied by a source other than the manufacturer of your motor vehicle. Warranties applicable to these replacement parts are provided by the manufacturer or distributor of the replacement parts rather than by the manufacturer of your motor vehicle."

(3) DELIVERY OF NOTICE. (a) The notice described in sub. (2) shall appear on or be attached to the estimate of the cost of repairing the insured's motor vehicle if the estimate is based on the use of one or more

708

nonoriginal manufacturer replacement parts and is prepared by the insurer or the insurer's representative. The insurer or the insurer's representative shall deliver the estimate and notice to the insured before the motor vehicle is repaired.

Sec. 632.38(2), (3).

■

¶ 16. Here, it is undisputed that American Family complied with WIS. STAT. § 632.38 when it provided DeRuyter with its estimate of repairs accompanied by a brochure setting forth its policy regarding the use of non-OEM parts. However, DeRuyter contends that § 632.38 does not create an independent basis to allow for the use of non-OEM parts when the underlying insurance contract does not provide for their use. We agree. Section 632.38 does not govern what must be recited in an insurance policy. Rather, it requires an insurer to give the insured notice at the time the insured provides an estimate of loss. Therefore, it is the language of the policy which controls the issue at bar. As we have already concluded, the language of the policy unambiguously provides for the repair or replacement of damaged parts due to a loss which, depending on the pre-collision condition of the vehicle, could reasonably include the use of non-OEM parts.

## CONCLUSION

¶ 17. We conclude that the language of the American Family policy unambiguously provides coverage for loss due to collision and limits its liability to the repair or replacement of damaged parts. A reasonable person in the position of the insured would have understood these repairs to include the potential use

of non-OEM parts. We therefore affirm the trial court's order dismissing DeRuyter's action against American Family.

*By the Court.*—Order affirmed.