**F I L E D**

PUBLISH

**October 18, 2006**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

LOIS LOVELL,

       Plaintiff-Appellant,

v.

No. 04-1429

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

       Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 02-RB-1152 (PAC))

Michael G. Sawaya (Donald J. Banovitz with him on the briefs), Sawaya, Rose &
Sawaya, P.C., Denver, Colorado for Plaintiff-Appellant.

Heather Perkins (Michael S. McCarthy and Michael S. Freeman with her on the briefs),
Faegre & Benson, LLP, Denver, Colorado for Defendant-Appellee.

Before **KELLY** and **BRISCOE**, Circuit Judges, and **JOHNSON**, District Judge.[*]

**JOHNSON**, District Judge.

---

[*]The Honorable William P. Johnson, District Court Judge, District of New Mexico,
sitting by designation.

# I. BACKGROUND

Plaintiffs below, Lois Lovell and Floyd Gibson,[1] brought a putative class action lawsuit in Colorado state court seeking reimbursement from their automobile insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), for the diminution in value of their vehicles. Lovell and Gibson were involved in separate automobile collisions in which their vehicles were damaged. Each vehicle was insured by State Farm and it reimbursed Lovell and Gibson for repairs to their respective vehicles, but Lovell and Gibson sought additional reimbursement for the diminished value of their vehicles. In their First Amended Class Action Complaint, Lovell and Gibson alleged that the Colorado Auto Reparations Act, hereinafter referred to as the "No Fault Act," mandates that insurers provide diminished value compensation through collision insurance.[2]

Lovell and Gibson alleged that State Farm, with knowledge of its statutory obligation to provide diminished value compensation through collision insurance, failed to pay diminished value compensation, and in some insurance contracts expressly excluded diminished value as a covered loss. They also alleged that State Farm failed to inform policyholders of diminished value coverage and failed to establish proper procedures for handling the diminution in value component of claims.

---

[1]Gibson is not a party to this appeal.

[2]The No Fault Act in effect at the time of Lovell's and Gibson's collisions, codified at Colo. Rev. Stat. § 10-4-701 et seq. (2003), was repealed by sunset effective July 1, 2003. The relevant terms of the No Fault Act, Colo. Rev. Stat. § 10-4-710, were reenacted and recodified effective July 1, 2003 at Colo Rev. Stat. § 10-4-621 (2005).

Lovell and Gibson brought their action on behalf of themselves and all others who were not informed or notified of their diminished value coverage and who were not paid diminished value compensation by State Farm. They sought declaratory relief in the form of a declaration that all automobile policies issued by State Farm in which the insureds selected collision coverage include diminished value coverage. They also sought a declaration that a failure to inform policyholders of diminished value coverage and the failure to pay diminished value claims is contrary to Colorado law, and that it is State Farm's obligation to give notice to insureds of the element of diminished value coverage, to evaluate all claims to determine if diminution in value is owed, and to pay diminution in value if owed. Lovell and Gibson sought equitable and injunctive relief to require State Farm to notify its insureds of diminished value coverage and to establish a procedure to handle claims in order to honor its obligation to pay diminution in value.

State Farm removed the action to federal court alleging removal jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1441and 28 U.S.C. § 1332. After removing the case to federal court, State Farm filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) arguing that Lovell's and Gibson's insurance policies expressly stated that their collision coverage did not include payment for any diminished value of the vehicles after repair, and that these provisions were entirely consistent with the No Fault Act. In response, Gibson and Lovell argued that the No Fault Act requires insurers to offer collision coverage, that collision coverage under the No Fault Act must include

coverage for losses resulting from the diminution of value of an insured vehicle, and thus policy exclusion of diminished value compensation is void as against public policy.

Plaintiff Gibson subsequently moved for remand arguing that the district court lacked subject matter jurisdiction because the amount in controversy requirement of 28 U.S.C. § 1332 was not met.[3] He stated that the damages he sought for diminished value could not be more than $9,000.00, the full value of his vehicle before his automobile accident. He argued that the amount in controversy must be met by each Plaintiff, and that the Plaintiff class members' damages could not be aggregated to meet the amount in controversy requirement.

In response to the motion to remand, State Farm argued that the amount in controversy requirement was met because its costs of compliance with any declaratory or injunctive relief may be considered to determine the amount in controversy, this amount would far exceed the $75,000.00 requirement and the costs may be aggregated among the class of plaintiffs because the class has a common interest in the relief such that it could only benefit the class as a whole. State Farm also urged that the amount in controversy requirement is met because the cost of compliance for any single plaintiff would exceed $75,000.00.

By Memorandum Opinion and Order, the district court denied Gibson's motion to remand concluding that it had subject matter jurisdiction over the case and granted State

---

[3]Lovell did not join in the motion to remand.

-4-

Farm's motion to dismiss. The district court entered judgment for State Farm on September 20, 2004.

Lovell appeals the district court's dismissal of her claims on the merits but does not appeal the district court's determination that it had subject matter jurisdiction over those claims. Since federal courts are courts of limited jurisdiction, this Court has an independent obligation to examine its own jurisdiction and the jurisdiction of the lower court in a case under review even when the parties have not raised jurisdiction as an issue. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986); *Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001).

Upon review of the jurisdictional issue, we conclude that the district court had subject matter jurisdiction of this cause of action. Upon further review of the district court's dismissal of the Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6), we AFFIRM for the following reasons.

## II. DISCUSSION

## A. JURISDICTION

This Court reviews a district court's ruling on the propriety of removal *de novo*. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289 (10th Cir. 2001). Jurisdiction based on diversity of citizenship exists when a dispute between citizens of different states involves an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). State Farm presented undisputed evidence below that its costs of compliance with Lovell's and Gibson's requested injunctive and equitable relief exceeded $75,000. In this case, it is

undisputed that there is complete diversity among the parties. The jurisdictional issue then is whether the amount in controversy requirement is met.

In cases seeking declaratory and injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The Tenth Circuit has followed what has commonly been referred to as the "either viewpoint rule" which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum. *Justice v. Atchison, Topeka and Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir. 1991). However, in multiple plaintiff cases, including class actions, the "either viewpoint rule" does not override the well established principle that each plaintiff or member of the class must individually satisfy the amount in controversy requirement. *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599 (10th Cir. 1970).

Class members' claims may be aggregated to meet the amount in controversy requirement only when they "unite to enforce a single title or right in which they have a common and undivided interest."[4] *Snyder*, 394 U.S. at 335. When plaintiffs' claims arise from individual contracts with a defendant, the plaintiffs are not suing to enforce a

---

[4]The Court recognizes that the Class Action Fairness Act of 2005 amended the diversity jurisdiction statute at 28 U.S.C. § 1332. Under the amended statute, class members' claims are now aggregated to determine whether there is the requisite amount in controversy in excess of $5,000,00. However, the Class Action Fairness Act, effective on February 18, 2005, is not retroactive to cases filed before the effective date. Pub. L. No. 109-2 § 9, 119 Stat. 4, 14 (2005).

common title or right to which they have a common and undivided interest. *See Kessler v. Nat'l Enter., Inc.*, 347 F.3d 1076, 1079-80 (8th Cir. 2003) (holding that class members seeking to enforce rights obtained through individual contracts could not aggregate their claims in order to meet the amount in controversy requirement); *Smith v. GTE Corp.*, 236 F.3d 1292, 1309 (11th Cir. 2001) ("When plaintiffs assert rights that arise from individual contracts with a defendant, those rights are separate and distinct, and thus, their claims may not be aggregated.") (citing *Oliver v. Alexander*, 31 U.S. (6 Pet.) 143, 145-48 (1832)).

In this case, each Plaintiff's and putative class member's claims arise from individual insurance contracts, and the Plaintiffs are not uniting to enforce a single title or right in which they have a common interest. Thus, the claims of the Plaintiffs and putative class members cannot be aggregated to meet the requisite amount in controversy.

The district court concluded that the amount in controversy requirement was met in this case because the injunctive relief sought by the Plaintiffs would not inure to any single plaintiff but would benefit the class as a whole. However, the test for whether multiple plaintiffs' claims may be aggregated requires a court to look at the nature of the claims. *See Lonnquist*, 421 F.2d at 599. There is no authority in this Circuit for looking at the divisibility of the benefit of injunctive relief to determine whether claims can be aggregated. While there are cases from other jurisdictions, cited by the district court, supporting this method of determining the amount in controversy, this method cannot be reconciled with this Court's holding in *Lonnquist*.

In a Seventh Circuit case addressing the "either viewpoint rule" in multiple plaintiff cases, the court held that each plaintiff's claim must be examined separately, and that the defendant in such a case is deemed to face multiple claims for injunctive relief. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 619 (7th Cir. 1997). The court further reasoned that, in order to avoid violating the nonaggregation rule, the cost to the defendant of the injunction running to a single plaintiff is the measure of the amount in controversy. *Id.*

We find the Seventh Circuit reasoning persuasive and consistent with this Court's prior rulings. Thus, while a court may look to the compliance costs of a defendant in multiple plaintiff cases to determine the amount in controversy, the cost running to each plaintiff must meet the amount in controversy requirement unless the plaintiffs' claims may be aggregated.

In the current case, State Farm has shown that its costs of compliance running to any single Plaintiff or putative class member would exceed $75,000 because the requested relief would require it to make significant changes to its business practices by developing a new system for adjusting and paying diminished value claims and providing extensive notice in Colorado. Because the compliance cost to any single plaintiff exceeds the requisite amount in controversy, the jurisdictional threshold is met and the district court properly exercised subject matter jurisdiction over this case.

## B. MERITS OF LOVELL'S APPEAL

The district court dismissed the Plaintiffs' Complaint pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim. This Court reviews a district court's order granting a

motion to dismiss for failure to state a claim *de novo*. *Ruiz v. McDonnell*, 299 F.3d 1173,

1181 (10th Cir. 2002). We accept all well-pleaded factual allegations in the complaint as

true and view them in the light most favorable to the nonmoving party. *Sutton v. Utah*

*Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). A dismissal pursuant to

12(b)(6) will be affirmed "only when it appears that the plaintiff can prove no set of facts

in support of the claims that would entitle the plaintiff to relief." *McDonald v.*

*Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).

### 1. The Colorado No Fault Act

Lovell urges that the district court erred in dismissing her case because the court

incorrectly concluded that the term "damage" as used in the No Fault Act does not

unambiguously and necessarily include diminished value. Lovell also contends that the

district court erred in determining that State Farm's exclusion of diminished value

coverage in its policy is a valid exclusion in light of the No Fault Act.

When federal courts are called upon to interpret state law, they must look to

rulings of the highest state court, and if no such rulings exist, must endeavor to predict

how the high court would rule. *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002);

*Lampkin v. Little*, 286 F.3d 1206, 1210 (10th Cir. 2002). No Colorado authority has yet

determined whether the term "damage" as used in the No Fault Act includes coverage for

diminished value to an insured vehicle and, assuming "damage" includes diminished

value, whether an insurer's attempt to exclude such coverage is void as against public

policy.[5]  Thus, this Court must attempt to predict how the Colorado Supreme Court would

decide these issues.

The No Fault Act in effect during all relevant times states that, "All insurers shall

offer collision coverage for damage to insured motor vehicles . . ..  Collision coverage

shall provide insurance without regard to fault against accidental property damage to the

insured motor vehicle . . .."  Colo. Rev. Stat. § 10-4-701(3) (2003).  The language of the

No Fault Act with regard to collision coverage is mandatory.  Thus, insurers must offer

collision coverage.  The No Fault Act does not, however,  clearly delineate the scope of

that coverage other than indicating that it must cover "damage" to insured motor vehicles.

The No Fault Act does not contain a definition of the term "damage."

Lovell contends that insurers in Colorado are obligated under the No Fault Act to

"cover all scenarios of physical damage to vehicles and to compensate individuals for

every aspect of damage that they might incur, including diminished value."  Appellant's

Opening Br. p.5.  In support of this argument, Lovell notes that the Colorado Legislature

included in the No Fault Act Declaration that the purpose of the No Fault Act is "to avoid

inadequate compensation to victims of automobile accidents; to require registrants of

---

[5]While there is no direct mention in the parties' briefs, in response to questioning
during oral argument over whether the issues raised in this appeal should be certified to
the Colorado Supreme Court, counsel stated that the district court certified these
questions to the Colorado Supreme Court, and the Colorado Supreme Court declined to
accept the certified questions.

motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles." Colo. Rev. Stat. § 10-4-702 (2003). Colorado courts have determined that the No Fault Act must be liberally construed to further its remedial and beneficial purposes. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553 (Colo. App. 1996). Lovell points out that the Colorado Legislature did not include a specific provision in the No Fault Act permitting insurers to exclude diminished value from coverage. Thus, she argues, "damage" must include all economic losses including diminished value or the express purposes of the No Fault Act would be frustrated.

As further support for her argument, Lovell turns to the legislative history of the No Fault Act. Senator Plaut, one of the sponsors of the bill that became part of the No Fault Act, gave a speech during the Colorado Senate's consideration of the bill. In that speech, he stated that insurance rates for consumers in other states that had adopted similar legislation had not increased because those consumers were being "paid promptly and fairly for their total economic loss and don't feel compelled to sue." Transcript of Senate Consideration on House Bill 1027 and Senate Bill 200, Appellant App. 105. Lovell argues that "total economic loss" necessarily includes diminished value, and that Senator Plaut's statements show the Colorado Legislature's intent that diminished value be included in "damages" under the No Fault Act. Accordingly, argues Lovell, a determination that diminished value is not an element of collision coverage inherent in

the term "damage" in the No Fault Act is contrary to the legislative intent of the No Fault Act.

The No Fault Act provides that every owner of a motor vehicle shall have a complying policy of insurance covering the motor vehicle. Colo. Stat.§ 10-4-705 (2003). The section that delineates a complying policy is titled "Required coverages -- complying policies -- PIP examination program." Colo. Stat. § 10-4-706 (2003). The portion of the No Fault Act that requires insurers to provide collision coverage is in a section titled "Required coverages are minimum." Colo. Stat. § 10-4-710 (2003). This section of the No Fault Act makes clear that Colorado consumers may purchase more extensive coverage than the mandatory minimum coverage set forth in section 10-4-706, but consumers are not required to purchase these additional coverages.

By requiring that insurers offer collision coverage but allowing consumers to choose whether to purchase such coverage, the Colorado Legislature clearly intended for consumers to have a choice in whether to contract for such coverage. A reasonable consumer would likely make this choice based on the amount of coverage, the amount of the deductible and the premium to be paid. Under Lovell's interpretation of the No Fault Act, an insurer would be required to provide coverage that included diminution in value, and a consumer would then have to choose between purchasing this coverage at whatever the cost or purchasing no collision coverage at all. This is not a reasonable interpretation of the No Fault Act. It is more reasonable to assume that the Colorado Legislature

intended for consumers to have a broader range of choices in purchasing optional coverage.

The No Fault Act expressly limits an insurer's ability to provide for exclusions from or conditions on mandatory coverage. *See* Colo. Stat. § 10-4-712 (2003). However, an insurer is permitted to make mandatory coverage subject to certain conditions and exclusions. *Id.* The No Fault Act does not expressly limit an insurer's ability to make optional collision coverage subject to conditions or exclusions. Thus, it is reasonable to conclude that the Colorado Legislature did not intend to limit an insurer's ability to provide for exclusions from optional collision coverage.

Lovell argues that the absence of any provision expressly permitting exclusions from collision coverage, coupled with the Colorado Legislature's demonstrated ability to draft such a provision, evidences the Legislature's intent that insurers not be permitted to make collision coverage subject to exclusions. This argument ignores the fact that the express provision regarding exclusions from mandatory coverage is a **limitation** on an insurer's ability to contract with consumers - it is not a grant of authority or permission to contract. In the absence of such limitation, insurers retain the same right to contract with consumers that existed prior to the Act. Moreover, Lovell's interpretation of the No Fault Act would lead to the absurd result that insurers could provide mandatory coverage subject to exclusions, but would be unable to provide for exclusions from optional collision coverage.

With regard to the speech by Colorado State Senator Plaut, his use of the phrase "total economic loss" is no more inclusive of diminished value than the term "damage" in the No Fault Act. Neither Senator Plaut's speech nor the No Fault Act itself gives any indication that the Colorado Legislature intended the No Fault Act to require insurers to provide diminished value compensation under optional collision coverage. We conclude that the No Fault Act does not require an insured to pay diminished value as an element of "damage" under collision coverage.

Lovell cites *Hyden v. Farmers*, 20 P.3d 1222, 1225 (Colo. App. 2000) for the proposition that Colorado courts have already recognized diminished value as an element of property damage. Lovell's reliance on *Hyden* is misplaced. In *Hyden*, the court was interpreting the language of an insurance policy and was addressing only whether the language of the policy, construed to give effect to the intent of the parties but with ambiguous terms construed in favor of the insured, required the insurer to pay diminished value. 20 P.3d at 1224. The court ultimately held that, "when an automobile insurer promises to provide an insured with a vehicle 'of like kind and quality,' the insurer must provide the insured, through repair, replacement, and/or compensation, the means of acquiring a vehicle substantially similar in function and value to that which the insured had prior to his or her accident." *Id.* at 1226. The court did not discuss or have before it any issue regarding the requirements under the No Fault Act. Nor does its holding, based entirely on principles of contract interpretation, have any relevance to an interpretation of the No Fault Act.

-14-

## 2. Plaintiff's Insurance Policy

Lovell's insurance policy with State Farm provides that State Farm would pay for the "loss" to her insured vehicle, in excess of the deductible, caused by collision. Appellant's App. 129. "Loss" is defined in the policy as "loss of or damage to your car." *Id.* The policy limits State Farm's liability for loss to "the lower of: 1). the actual cash value, or 2). the cost of repair or replacement." *Id.* "Actual cash value is determined by the market value, age and condition at the time the loss occurred." *Id.* Under the policy provision for settlement of loss for collision coverage, State Farm has "the right to settle a loss" in one of two ways. *Id.* at 130. First, it may pay the agreed actual cash value of the property at the time of the loss. *Id.* Alternatively, State Farm may repair or replace the damaged property. *Id.* If State Farm repairs or replaces damaged property and this results in betterment, the insured must pay for the amount of betterment. *Id.*

An endorsement to the policy amended the definition of "loss" stating that "loss does not include any reduction in the value of any vehicle . . . as compared to its value before it was damaged." *Id.* at 134. The endorsement also changed the limit of liability for collision coverage such that the limit of State Farm's liability for loss to property to "the lower of : 1) the actual cash value; or 2) the cost of repair or replacement. The cost of repair or replacement does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged." *Id.*

Lovell argues that the language in her insurance policy that requires an insured to pay for any betterment to property after repair or replacement is at odds and inconsistent

-15-

with any exclusion of diminished value coverage and is thus evidence that diminished value coverage is included in her policy. While the betterment provision may appear unfair or unequal in light of policy provisions that State Farm's liability for loss is limited to the lower of actual cash value or the cost of repair or replacement, the parties were free to include whatever terms in the contract they desired, and Lovell was not compelled to purchase collision coverage. *See Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 346 (Colo. 1997) (recognizing a strong policy of freedom of contract in Colorado). "Courts should not rewrite insurance policy provision that are clear and unambiguous." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). The terms of Lovell's insurance policy, even without consideration of the provisions of the endorsement, are clear and unambiguous in limiting State Farm's liability for loss in such a manner as to exclude any coverage for diminished value. The endorsement expressly excludes diminished value coverage. This Court cannot remedy Lovell's dissatisfaction with the terms of her policy by rewriting the terms to equalize the betterment provision with the provision limiting State Farm's liability for loss.

Lovell's primary argument that her insurance policy includes diminished value coverage relies on her interpretation of the No Fault Act as requiring collision coverage to include coverage for diminished value of an insured's vehicle. Lovell is correct that, if the No Fault Act mandated that collision coverage include diminished value compensation, State Farm's attempt to exclude diminished value coverage would be void. *See McConnell v. St. Paul Fire & Marine Ins. Co.*, 906 P.2d 109, 112 (Colo. 1995) ("any

-16-

clause of a policy that attempts to dilute, condition, or limit statutorily mandated coverage" is void and unenforceable."). However, we have concluded that the No Fault Act does not require an insurer to pay diminished value as an element of "damage" under collision coverage. Accordingly, State Farm's exclusion of diminished value compensation from its collision coverage is not void and unenforceable as against Colorado public policy.

### III.  CONCLUSION

Because the No Fault Act does not require State Farm to pay diminished value compensation under its collision coverage of Lovell's vehicle, and Lovell's insurance policy contains an enforceable exclusion of such coverage, Lovell can prove no set of facts in support of her claims that would entitle her to relief. Thus, the district court did not err in granting State Farm's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and the judgment of the district court is AFFIRMED.