**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THOMAS ROBERTS,

      Plaintiff-Appellant,

v.

CESSNA AIRCRAFT COMPANY,

      Defendant-Appellee.

No. 07-3133
(D.C. No. 05-CV-1325-MLB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **ANDERSON**, and **BRORBY**, Circuit Judges.

Plaintiff-appellant Thomas Roberts appeals from the district court's grant

of summary judgment to his former employer, defendant-appellee Cessna Aircraft

Co., on his claims that Cessna violated the Americans with Disabilities Act

(ADA), 42 U.S.C. § 12101-12213.  Mr. Roberts argued that he was disabled

because he has had 20/200 vision in his left eye since birth.  He argued Cessna

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violated the ADA by (1) placing him in a position as a sheet-metal assembler, which it knew he could not perform due to his limited vision (placement claim), (2) failing to accommodate his visual disability by denying his requests for a transfer from the sheet-metal-assembler position to a stockroom position (accommodation claim), and (3) refusing him transfer, disciplining, and terminating him in retaliation for (a) a previous complaint to the Equal Employment Opportunity Commission (EEOC) regarding a different alleged disability, and (b) his accommodation requests. In granting summary judgment to Cessna on Mr. Roberts' placement and accommodation claims, the district court held that Mr. Roberts had failed to make out a prima facie discrimination case as to either claim. As to Mr. Roberts' retaliation claim, the district court held that while Mr. Roberts had established his prima facia case, he had failed to show that Cessna's assertions that (1) he was not recalled to the stockroom positions that were open prior to his recall to the sheet-metal-assembler position due to his lifting restrictions, and (2) the disciplinary actions and termination were based on poor performance, were mere pretexts for discrimination.

On appeal Mr. Roberts challenges each of these determinations and also complains that the district court improperly relied on faulty affidavits provided by Cessna. For the reasons set forth below we exercise our jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I.  Motion to Dismiss

We must first address Cessna's motion to dismiss Mr. Roberts' appeal. Cessna seeks dismissal due to Mr. Roberts' counsel's persistent inability to meet filing deadlines in both the district court and this court and the fact that Mr. Roberts' appellate brief exceeds the page limitation set forth in Federal Rule of Appellate Procedure 32(a)(7).[1]  Although we do not take lightly the failure of Mr. Roberts' attorney to comply with our procedural rules, and recognize the burdens such failures often place on opposing parties, the best course of action in this case is to deny appellee's motion to dismiss and proceed to the rather straight-forward merits decision.

## II.  Factual Background

Mr. Roberts began working for Cessna in 1995.  He worked as a sheet-metal assembler for four months and then transferred to a position in one of the stockrooms, a position he held until undergoing hernia surgery in 2002.  Upon return from surgery, Mr. Roberts was placed on light duty with a number of temporary restrictions on his physical activity, including a limitation that he not lift over ten pounds, and he was given a temporary position in the mail room.

---

[1]      Although Mr. Roberts' attorney has signed a certificate of compliance certifying that the brief is less than thirty pages, the brief's own page numbering shows the substantive section of the brief is over thirty pages long and that the certificate is found on the thirty-second page.

After his doctor released him to return to work–the release set no limitations on his ability to work–Cessna sent him to an outside clinic to undergo a Functional Capacity Evaluation (FCE). The report on the evaluation, which was signed by an industrial rehabilitation specialist and a physical therapist, concluded the most Mr. Roberts could lift from floor to waist was 40 pounds and that he could lift no more than 25 pounds over his head. Aplt. App. at 305. It further concluded he could exert no more than 39 pounds of pushing force and 38 pounds of pulling force. *Id.*

Following the FCE, a physician employed by Cessna determined that Mr. Roberts had obtained maximum medical improvement in recovering from his hernia injury and that the limitations required by the FCE exceeded the listed physical demands for his stockroom position, which required that he occasionally lift up to 50 pounds. Mr. Roberts was put on medical leave and automatically placed on the recall list for other stockroom and sheet-metal-assembler positions. The record shows he was considered for and not placed in a number of other stockroom positions–although none were in the department he previously worked in. Cessna presented affidavits averring that he did not meet the physical requirements for any of these positions and the record contains records of job visits from Cessna doctors showing they reviewed the different positions and determined that all of the jobs would require either a greater push/pull ability or a greater lifting ability than Mr. Roberts possessed, and sometimes both.

Mr. Roberts disagreed with the lifting restriction and filed an EEOC claim.[2]

Mr. Roberts was eventually recalled to a different sheet-metal-assembler position. He admits that he performed very poorly at this position due to his vision disability and after various attempts to help him improve, and a number of disciplinary reports due to his poor performance, he was terminated and eventually sued Cessna. As noted above, the district court granted Cessna summary judgment on all Mr. Roberts' claims and he now appeals.

### III. Analysis

A. Affidavits

We turn first to Mr. Roberts' assertion that the district court improperly considered affidavits presented with Cessna's summary judgment motion. The whole of Mr. Roberts' argument is: "Cessna used affidavits which were not based upon personal knowledge. The affidavits as Roberts pointed out in his supplemental brief were defective and should not be used." Aplt. Br. at 9. In support of this conclusory point, Mr. Roberts cites to the referenced supplemental brief opposing summary judgment which, in turn, merely alleged that "all" of

---

[2] Mr. Roberts asserted that Cessna was improperly treating him as disabled by taking his job away and refusing to give him a new one. Aplt. App. at 285-86. Cessna responded that it did not consider the physical restrictions from the hernia operation to be disabling and that Mr. Roberts was simply placed on leave due to permanent job restrictions that could not be accommodated. *Id*. at 279-81. Although the record does not contain the EEOC's final ruling, it appears the Kansas Human Rights Commission found no probable cause. *See* Aplt. App. at 342.

Cessna's affidavits violated Federal Rule of Civil Procedure 56 because they failed to *state* they were based upon personal knowledge. Aplt. App. at 148. But the personal knowledge of the affiant required by Rule 56(e) may be inferred from the context of the affidavit. *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). Thus, the failure of an affidavit to *state* that the statements therein were based on personal knowledge does not prevent that affidavit from being properly considered.

B. Placement claim

Mr. Roberts asserts that the district court erred in granting Cessna summary judgment on his placement claim.

> We review the district court's decision [granting summary judgment] de novo, applying the same legal standards applicable in the district court, including a view of the evidence in the light most favorable to [Mr. Roberts] and drawing all inferences in [his] favor. Summary judgment is appropriate only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th Cir. 2008) (citation and quotation omitted).

Mr. Roberts argues that a reasonable jury could have determined that Cessna violated the ADA by recalling him to the sheet-metal-assembler position because it recalled him to that position to have an excuse to terminate him and it

-6-

knew that his vision disability would prevent him from properly performing that job.

> No covered entity[3] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

> To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability.

*Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (quotation omitted). Mr. Roberts' claim was apparently that Cessna moved him into that position in order to terminate him because it knew he could not perform the essential functions of that job with his partial blindness. Assuming without deciding that in some circumstances hiring a disabled person into a position that he or she cannot perform in order to later terminate them can be considered a discriminatory act, we agree with the district court that in this case Mr. Roberts failed to present sufficient evidence on this argument to survive summary judgment.

---

[3] Under 42 U.S.C. § 12111(2), "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." Cessna qualifies as an "employer" under § 12111(5)(A).

Cessna presented affidavits from the individual employees involved in the placement of Mr. Roberts in the sheet-metal-assembler position averring they were not personally aware, and therefore did not consider, Mr. Roberts' vision impairment at the time of placement. Mr. Roberts presented evidence that there were references to his impairment in the company medical records, but he presented no evidence that, even if those employees were generally aware of his impairment, they were aware that it would prevent him from performing the sheet-metal-assembler job he was recalled to. Mr. Roberts was recalled to that position because he had previously and successfully–from a vision standpoint–worked as a sheet-metal assembler. While Mr. Roberts presented evidence that the second position turned out to be much more difficult than the first, he himself expressed no concern at the time of recall that his vision would prevent him from properly doing the job and he testified that when he was recalled he thought that he would be able to do the job. He presented no evidence that the employees responsible for the recall had any knowledge of (1) the difference in difficulties between the two positions, or (2) that any such difference would be so great as to prevent him from successfully completing his work. Thus, Mr. Roberts presented no evidence to suggest that Cessna had any discriminatory intent in placing him in that position.

C.  Accommodation Claim

Mr. Roberts' also asserts that a factual question existed as to whether Cessna would have violated the collective bargaining agreement (CBA) between Cessna and Mr. Roberts' union if it had accommodated his vision disability by transferring him from the sheet-metal-assembler position to a stockroom position.[4]

Under the ADA, an employer discriminates against a qualified individual with a disability if the employer does not

> mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer].

42 U.S.C. § 12112(b)(5)(A).  Further, an employer must, when reasonable, accommodate a disabled employee by reassignment to a vacant position if the employee cannot be accommodated in his current job.  *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1167 (10th Cir. 1999) (en banc).  To present his prima facie failure to accommodate claim under the ADA, Mr. Roberts had to show (1) that he is disabled within meaning of ADA, (2) that he could perform, either with or without reasonable accommodation, the essential functions of the stockroom jobs, and (3) that Cessna did not take reasonable steps to reassign him to those vacant

---

[4]    The record includes excerpts from an agreement between Cessna and the International Association of Machinists.

positions.  *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004).

But "an existing position would not truly be vacant, even though it is not presently filled by an existing employee, if under a collective bargaining agreement other employees have a vested priority right to such vacant positions." *Midland Brake*, 180 F.3d at 1175.  Here, the district court found that "[t]he CBA does not allow transfer into a position unless the recall lists for those positions have been fully exhausted.  At the time of plaintiff's requests, the recall lists had not been exhausted."  Aplt. App. at 273.

Mr. Roberts does not contest that the recall lists were not exhausted, but he asserts that under section 11.08 of the CBA the union and Cessna could have agreed to modify the CBA.  He argues that "[i]t is undisputed that Roberts' union requested a transfer," Aplt. Opening Br. at 11, and asserts this was tantamount to a request by the union–and refused by Cessna–that the CBA be modified to allow such a transfer.  This argument misrepresents both the content of the CBA and the union's actions.

Section 11.07 of the CBA states that an employee is not eligible for transfer until he or she has completed six months at his or her current position.  Aplt. App. at 316.  But § 11.08 provides that a transfer request from an employee with less than six months employment in their current position would be considered upon mutual agreement between Cessna and the union.  Nevertheless, we do not

-10-

read § 11.08 to alter the CBA's requirement that the recall lists be fully exhausted. Even if it did, however, there was no evidence presented that the union wanted to modify the CBA to allow Mr. Roberts to be transferred prior to exhaustion of those lists. In his response to Cessna's summary judgment motion Mr. Roberts cited to a Cessna business record to support his claim that the union wanted him to be transferred. That record shows only that at one point Mr. Roberts and "his Union Steward" met with a Cessna human resources employee. Aplt. App. at 329. The record does not provide any information regarding the steward's role in the meeting other than stating that the steward said he could "'testify'" to the fact that Mr. Roberts was "'atrocious at doing sheet metal.'" *Id*. This is a long way from showing that the *union* sought to modify the CBA to allow Mr. Roberts to transfer into a stockroom position and is not enough to create a genuine issue of material fact for trial.

D. Retaliation Claim

Mr. Roberts argues that the district court erred in granting summary judgment on his claim that Cessna violated the ADA by refusing him transfer, disciplining, and terminating him in retaliation for (a) a previous complaint to the EEOC regarding a different alleged disability, and (b) his accommodation request. Cessna claims its refusal to recall him into the open stockroom positions prior to his recall to the sheet-metal-assembler position was due to the fact that the

stockroom positions in question exceeded the lifting restrictions he was subject to and that the disciplinary actions and termination were performance-based.

"In order to establish a prima facie case of retaliation, [Mr. Roberts] must show: (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Proctor v. U.P.S.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (quotation omitted). Filing an EEOC complaint and requesting accommodation are both protected activities. *Id*. (EEOC complaint); *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007).

The district court found that while Mr. Roberts established his prima facie case, he had failed to show that Cessna's assertions that (1) he was not recalled to the stockroom positions that were open prior to his recall to the sheet-metal-assembler position due to his lifting restrictions, and (2) the disciplinary actions and termination were based on poor performance, were mere pretexts for discrimination. We agree.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Trujillo*, 524 F.3d at 1158. Regarding

-12-

Cessna's failure to recall him to the open stockroom positions, Mr. Roberts' main arguments as to pretext in his response to Cessna's summary judgment motion were that Cessna's lifting requirements for those positions were "bogus" and that the recall denials were close in time to the EEOC complaint. For the reasons set forth by the district court, *see* Aplt. App. at 277-78, we agree that those arguments are insufficient to show pretext. Mr. Roberts raised other minor arguments in the district court and on appeal in an effort to show pretext. Many of these are based on misrepresentations of the record; and some of the arguments raised on appeal were not raised to the district court. But none of the arguments is sufficient to show district court error, because none of the evidence referenced is sufficient to allow a reasonable factfinder to rationally find Cessna's proffered nondiscriminatory reasons for the questioned adverse employment actions unworthy of credence.[5]

---

[5] Mr. Roberts spends a good portion of his appellate argument asserting that Cessna violated the ADA by removing him from his previous stockroom position because of "bogus" lifting restrictions imposed as the result of a functional capacity examination he underwent following hernia surgery. He also complains that Cessna violated the ADA by refusing to place him in other stockroom positions due to those restrictions prior to his placement in the sheet-metal-assembler position. These were not issues that were before the district court or were addressed by the district court in its decision.

The pretrial order that was approved by counsel for both parties and entered by the court on September 27, 2006, framed the claims at issue. *See* Fed. R. Civ. P. 16(c)(2)(A), (d). "[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

(continued...)

IV.  Conclusion

The judgment of the district court is AFFIRMED.


Entered for the Court


Wade Brorby
Circuit Judge

---

[5](...continued)
The pretrial order in this case set forth the claims at issue, i.e., that Cessna violated the ADA by (1) placing him in a position as a sheet-metal assembler, which it knew he could not perform due to his limited vision, (2) failing to accommodate his visual disability by transferring him from his sheet-metal-assembler position to a stockroom position, and (3) disciplining and terminating him in retaliation for a previous complaint to the EEOC.  *See* R., Doc. 45 at 3-4, 8-9.

Mr. Roberts also makes various arguments that seem to claim that he both was and was not disabled by his hernia and by carpal tunnel syndrome despite the fact that the record appears clear that his claimed disability was, as found by the district court, that he was partially blind.  These arguments have not been considered.