FILED
United States Court of Appeals
Tenth Circuit

July 10, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WILLIAM LOGINOV,

    Plaintiff - Appellant,

v.

SHERIDAN MEMORIAL HOSPITAL,
a/k/a Memorial Hospital of Sheridan
County; THE BOARD OF TRUSTEES OF
SHERIDAN MEMORIAL HOSPITAL,

    Defendants - Appellees.

No. 24-8032
(D.C. No. 2:23-CV-00181-KHR)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.

_____

This case arises out of Sheridan Memorial Hospital's medical treatment of

William Loginov after his COVID-19 diagnosis in 2021.  Two years after that

diagnosis, Loginov sued the Hospital in the United States District Court for the

District of Wyoming, claiming the Hospital's negligence caused him to develop

osmotic demyelination syndrome.  The district court granted summary judgment to

the Hospital, concluding the Hospital was immune from liability for Loginov's claim

under Wyoming state law.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Loginov urges reversal on three grounds. First, he contends the district court erred when it ruled on the Hospital's motion without allowing him to complete discovery. Second, he claims the district court should not have considered a medical doctor's affidavit at the summary judgment stage. And third, he argues the district court erred in its interpretation of Wyoming state law when it granted the Hospital's motion for summary judgment.

All three arguments fail. Our caselaw makes clear that district courts may rule on a summary judgment motion before discovery has been completed where, as here, the nonmoving party did not submit an affidavit explaining how additional discovery would help him rebut the motion. Further, the district court did not abuse its discretion in considering the medical doctor's affidavit because the affidavit satisfies the requirements set forth in Federal Rule of Civil Procedure 56(c)(4). Finally, the Hospital is entitled to immunity under any reasonable interpretation of Wyoming state law. Accordingly, we affirm the district court's grant of summary judgment to the Hospital.

## I.

Loginov was admitted to Sheridan Memorial Hospital three times in 2021: (1) September 24–29; (2) October 3–4; and (3) October 7–9. We detail each occasion in turn.

On September 24, Loginov presented to the Hospital's emergency department with symptoms of altered mental status, body aches, fatigue, and slurred speech. After Loginov tested positive for COVID-19, the Hospital admitted him to the

2

medical floor for treatment of related symptoms, including hyponatremia.[1]  The

Hospital placed Loginov on a sodium repletion treatment plan and discharged him on

September 29.

Loginov returned to the Hospital on October 3, reporting concerns of

worsening slowed speech.  Hospital staff ordered an MRI of Loginov's brain, which

was initially read as unrevealing.  Staff attempted to contact (but was unable to

reach) an out-of-hospital neurologist for verification, and again discharged Loginov

on October 4.  Soon after, an in-house radiologist reviewed the MRI and concluded

there was evidence of demyelination[2] in Loginov's brain.  The Hospital contacted

Loginov and recommended he return for further testing, but Loginov declined.

On October 7, Loginov again presented to the Hospital with concerns of

slurred speech and difficulty swallowing.  Hospital staff attempted to treat Loginov's

symptoms and ordered another MRI.  But because there was no on-staff neurologist

or MRI machine available, the Hospital attempted to transfer Loginov to one of the

larger hospitals in Colorado, South Dakota, Nebraska, Montana, or other cities in

Wyoming.  The Hospital could not complete the transfer because each of the

facilities it contacted was at maximum capacity with COVID-19-related admissions.

As a result, the Hospital formally readmitted Loginov and began therapy to treat his

---

[1] Hyponatremia is a medical condition where sodium levels in the blood are abnormally low.

[2] Demyelination is a condition that causes damage to the myelin sheath, a protective covering that surrounds nerve fibers.  Damage to the myelin sheath often causes neurological symptoms, such as trouble walking or seeing.

3

symptoms until October 9, when he arranged a transfer to a facility in Billings, Montana.

Loginov sued the Hospital in 2023, claiming the care he received there—particularly his sodium repletion treatment—was performed negligently, causing him to develop osmotic demyelination syndrome ("ODS").  Specifically, he argued Hospital staff administered "excessive sodium at an excessive rate" while treating his hyponatremia, permanently damaging his brain.  Aplt. App'x at 12.

During the initial pretrial conference, the district court set a nine-month period for discovery.  Approximately one month later, the Hospital moved for summary judgment based on a Wyoming statute granting immunity to health care providers for COVID-19 liability claims.  The Hospital supported its motion using an affidavit from its chief medical officer, Dr. Luke Goddard, which detailed Loginov's care based on the Hospital's records of his visits.  Loginov opposed the motion, arguing (among other things) that Dr. Goddard's affidavit was generally "troubling," *id.* at 81, that the motion was premature because discovery was set to continue for another eight months, and that the Hospital's assertion of immunity was meritless.  He also included an affidavit from Dr. Joshua Schwimmer discussing the causal connection between improper treatment of hyponatremia and the development of ODS.

The district court granted summary judgment to the Hospital, and Loginov timely appealed.

4

## II.

Loginov urges reversal on three grounds.  First, he contends the district court erred when it ruled on the Hospital's motion without allowing him to complete discovery.  Second, he claims the district court should not have considered Dr. Goddard's affidavit at the summary judgment stage.  And third, he argues Wyoming state law does not shield the Hospital from his negligence claims.  We address and reject each argument in turn.

## A.

Loginov first argues the district court erred in ruling on the Hospital's motion for summary judgment without allowing him to complete discovery.  Because Loginov did not submit an affidavit explaining how additional discovery would help him rebut the Hospital's motion, we disagree.

We review a district court's refusal to allow additional discovery before ruling on a summary judgment motion for an abuse of discretion.  *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017).  Under the abuse-of-discretion standard, "we defer to the district court's judgment so long as it falls within the realm of [the] rationally available choices."  *Id.* (alteration in original) (quotation omitted).

The Federal Rules of Civil Procedure do not require district courts to wait until discovery is completed before granting summary judgment.  *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 & n.9 (10th Cir. 2021).  But Rule 56(d) provides nonmovants an opportunity to request additional discovery before the ruling:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>   (1) defer considering the motion or deny it;
>   (2) allow time to obtain affidavits or declarations or to take discovery; or
>   (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Generally, courts should refuse to grant summary judgment "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). "But relief under Rule 56(d) is not automatic." *Cerveny*, 855 F.3d at 1110. "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant." *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). The affidavit must "explain why facts precluding summary judgment cannot be presented." *Id.*

Here, Loginov did not submit an affidavit explaining how additional discovery would help him rebut the Hospital's motion. And though his summary judgment response "arguably contains [some of] the information required in Rule 56(d) . . . [,] we may not look beyond the affidavit in considering a Rule 56(d) request." *Cerveny*, 855 F.3d at 1110 (refusing to consider plaintiffs' arguments for additional discovery when those arguments were made only in their summary judgment response). Accordingly, we conclude the district court did not abuse its discretion when it ruled

on the Hospital's motion for summary judgment without requiring additional discovery.[3]

B.

Loginov next argues the district court should not have considered Dr. Goddard's affidavit at the summary judgment stage. Because the affidavit satisfies the requirements set forth in Federal Rule of Civil Procedure 56(c)(4), we disagree.

"We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Parties may rely on an affidavit or a declaration to support or oppose a motion for summary judgment, *see* Fed. R. Civ. P. 56(c)(1)(A), if that affidavit or declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4).

Loginov does not include this standard in his brief. Nor does he cite a single case to support his claim that the district court should not have considered Dr.

---

[3] Relying on a single line from an out-of-circuit case, Loginov claims the above-cited rules do not apply here because there was "no discovery at all" in this case. Aplt. Br. at 13–14 (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("Typically, when the parties have no opportunity for discovery, denying the Rule 56[d] motion and ruling on a summary judgment motion is likely to be an abuse of discretion.")). But he ignores the very next line of that case: "However, as a general matter we have upheld the denial of Rule 56[d] motions when the court deems as too vague *the affidavits submitted in support of the motion*." *Estrin*, 538 F.3d at 420 (emphasis added). Because Loginov did nothing beyond making arguments for discovery in his summary judgment response, his reliance on *Estrin* is misplaced.

7

Goddard's affidavit at the summary judgment stage. But he does make two contentions that we interpret as challenging the "personal knowledge" and "admissibility of the evidence" elements of Rule 56(c)(4). As we explain, each contention contradicts the record and necessarily fails.

First, Loginov claims Dr. Goddard did not have "firsthand knowledge of the patient." Aplt. Br. at 10. But the affidavit makes clear that Dr. Goddard's statements were "based upon [his] review of [ ] Loginov's admissions to Sheridan Memorial Hospital on September 24–29, 2021, October 3–4, 2021, and October 7–9, 2021." Aplt. App'x at 50. And in this case, personal knowledge can be inferred based on Dr. Goddard's status at the chief medical officer of the Hospital and his review of the relevant records.[4] *See Colonial Pac. Leasing Corp. v. N & N Partners, LLC*, 981 F. Supp. 2d 1345, 1355 (N.D. Ga. 2013) ("Affiants can have personal knowledge for purposes of Rule 56(c)(4) based on their review of business records and files."); *Roberts v. Cessna Aircraft Co.*, 289 F. App'x 321, 324 (10th Cir. 2008)

---

[4] In a single sentence, Loginov asserts that "[t]he actual chart [was] not offered in support of the Rule 56 motion." Aplt. Br. at 10. We note that some courts have refused to consider an affidavit at the summary judgment stage where, as here, the documents referenced in the affidavit are not also provided to the court. *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1261–62 (9th Cir. 1993). But because Loginov does not develop this argument, we decline to address it. *See Defs. of Wildlife v. United States Forest Serv.*, 94 F.4th 1210, 1227 n.10 ("Perfunctory allegations of error that fail to frame and develop an issue are insufficient to invoke appellate review." (citation modified)); *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1160 (10th Cir. 2007) (declining to address the merits of a party's claim where the opening brief cited only three cases); *id.* (explaining that "mere conclusory allegations with no citations to the record or any legal authority for support does not constitute adequate briefing" (quotation and internal quotation marks omitted)).

(unpublished) ("[T]he personal knowledge of the affiant . . . may be inferred from the context of the affidavit.").[5]

Second, Loginov argues the testimony set forth in the affidavit is merely Dr. Goddard's opinion because it "simply does not present 'facts.'"  Aplt. Br. at 10.  But in making this circular argument, Loginov does not cite any specific provisions of the affidavit aside from Paragraph 20, which the district court expressly disregarded.[6] Further, to the uncertain extent Loginov argues the evidence set forth in the affidavit would be inadmissible at trial, his claim fails.  The facts contained in Dr. Goddard's affidavit are undoubtedly relevant, given their probative value into the nature and purposes of Loginov's admissions to the Hospital.  And medical records—such as those relied on by Dr. Goddard—are routinely admitted as evidence under the business records exception to the rule against hearsay.  *See* Fed. R. Evid. 803(6). Accordingly, the district court did not abuse its discretion when it concluded that Dr. Goddard's affidavit met the requirements set forth in Federal Rule of Civil Procedure 56(c)(4).

## C.

In his final argument for reversal, Loginov contends the district court erred in its interpretation of Wyoming state law.  Specifically, he contends the statutory grant

---

[5] We cite unpublished, nonprecedential opinions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[6] Paragraph 20 reads, in relevant part:  "The treatment [Loginov] received to correct the hyponatremia [on separate visits] is [ ] part of the same transaction or occurrence."  Aplt. App'x at 53.  The district court correctly set aside this statement as an improper legal conclusion when ruling on summary judgment.

of immunity to health care providers for "COVID-19 liability claims" does not apply to the Hospital's actions. *See* Wyo. Stat. Ann. §§ 35-4-114(d), 1-1-141(a)(iii)(B). We disagree. Under any reasonable interpretation, Loginov's claims fall squarely under the statutory grant of immunity, and the Hospital is entitled to summary judgment.

We review de novo a district court's grant of summary judgment. *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (quotation omitted).

"When we are called upon to interpret state law, we 'must look to the rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule.'" *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)). Here, the parties have not identified—and we have not found—any cases in which Wyoming courts have resolved the interpretive questions raised here. Accordingly, we are left to interpret those statutes "according to state rules of statutory construction." *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005).

Wyoming courts begin their interpretive analysis where most courts do: with the text of the statute. *See Redco Constr. v. Profile Props., LLC*, 271 P.3d 408, 415

10

(Wyo. 2012). This means applying "the language of the statute using its ordinary and obvious meaning." *Id.* at 416 (quotation omitted). Where "the language of the statute is not ambiguous, there is no room for further construction." *Id.* (quotation omitted). If the language is ambiguous, Wyoming courts "apply[] general principles of statutory construction" in an effort "to accurately reflect the intent of the legislature." *Id.* (quotation omitted).

With these maxims in mind, we turn to the interpretive questions here. Wyoming law provides:

> Any health care provider, person or entity shall be immune from liability for damages in an action involving a COVID-19 liability claim unless the person seeking damages proves that the health care provider, person or entity took actions that constitute gross negligence or willful or wanton misconduct.

Wyo. Stat. Ann. § 35-4-114(d). Loginov "did not allege in the Complaint, and does not allege now, 'gross negligence or willful or wanton misconduct.'" Aplt. Br. at 15. Thus, our sole task is to determine whether Loginov's lawsuit qualifies as "an action involving a COVID-19 liability claim." Wyo. Stat. Ann. § 35-4-114(d).

Relevant here, a "COVID-19 liability claim" means a cause of action for:

> (B) Acts or omissions by a health care facility or provider in arranging for or providing health care services or medical care to the claimant that resulted in injury to or death of the claimant, or where the response to COVID-19 reasonably interfered with the arranging for or the providing of health care services or medical care for the claimant[.]

*Id.* § 1-1-141(a)(iii)(B).

By its plain text, the statute provides immunity against two types of claims. The first involves a health care provider's "acts or omissions . . . in arranging or

11

providing health care services or medical care to the claimant that resulted in injury to or death of the claimant." *Id.* The second grants health care providers immunity for acts "where the response to COVID-19 reasonably interfered with the arranging for or the providing of health care services or medical care for the claimant." *Id.*

Because the first clause does not include the term "COVID-19," Loginov suggests we may construe it as granting immunity for nearly all claims against health care providers—including in cases unrelated to COVID-19. Reply Br. at 4–6. In his view, to limit the statutory grant of immunity to claims relating to COVID-19 would be to "rewrite [the] statute to make it make sense," thus exceeding the judiciary's role. Aplt. Br. at 22. And based on the "absurd" result this reading produces—granting immunity for all acts that do not constitute gross negligence or willful misconduct—Loginov contends that portion of the statute "cannot be judicially salvaged, and so must fail entirely." Reply Br. at 6.

We need not definitively resolve whether § 1-1-141(a)(iii)(B) requires a nexus between a plaintiff's claim and the treatment of COVID-19 because Loginov's claim fails under either interpretation. Under Loginov's broader reading, the statute provides blanket immunity against all "acts or omissions by a health care facility or provider in arranging for or providing health care services or medical care . . . that result[] in injury to or death of the claimant." Wyo. Stat. Ann. § 1-1-141(a)(iii)(B). Viewing the facts in the light most favorable to Loginov, the Hospital administered "far too much sodium, far too fast," causing permanent damage to Loginov's brain. Aplt. Br. at 8. This is an "act" (administering sodium) by a "health care facility" (the

Hospital) in "providing health care services or medical care" (a sodium repletion treatment) that resulted in an "injury" (ODS) to the "claimant" (Loginov). Wyo. Stat. Ann. § 1-1-141(a)(iii)(B).

The scarcely applied absurdity exception does not save Loginov's claim. To begin, Loginov does not cite a single case where Wyoming state courts (or any other courts) have applied that exception in the manner he asks us to do so. *Compare* Reply Br. at 6 (arguing that, because a plain reading of the statute produces an "absurd" result, it "cannot be judicially salvaged, and so *must fail entirely*" (emphasis added)), *with HB Fam. Ltd. P'ship v. Teton Cnty. Bd. of Cnty. Comm'rs*, 468 P.3d 1081, 1096 (Wyo. 2020) ("[W]e strive to *avoid an interpretation* that produces an absurd result." (emphasis added)). Nor does he explain why granting blanket immunity to health care providers during the COVID-19 pandemic "would lead to an outcome so 'absurd' that [the legislature] clearly could not have intended such an outcome." *Resol. Tr. Corp. v. Westgate Partners, Ltd.*, 937 F.2d 526, 529 (10th Cir. 1991). Accordingly, we do not find the absurdity exception applicable in this case.[7]

---

[7] Loginov's claim that the Wyoming legislature has previously made drafting errors does not help his cause. *See* Reply Br. at 7–8 (discussing the Wyoming legislature's "accidental repeal of the entire wrongful death law"). Imperfect legislation does not relieve a court of its constitutional duty to apply the law as it is written. "Indeed, so long as [the legislature] remains faithful to the Constitution, it is free to enact any number of foolish statutes." *Resol. Tr. Corp.*, 937 F.2d at 531. We decline Loginov's implicit two-part invitation to (1) take a position on the advisability of the statutes at issue (under either interpretation) and (2) substitute our judgment of proper public policy for that of the legislature.

Loginov's argument fares no better if we read the statute as attaching immunity only where the claim bears a relation to the treatment of COVID-19. As Loginov concedes, he tested positive for COVID-19 at the time of his first admission to the Hospital. The Hospital began treating him for hyponatremia, a condition caused by COVID-19. *See* Aplt. App'x at 96 (Loginov's affiant acknowledging that hyponatremia "is caused by many illnesses, *including COVID-19*" (emphasis added)). The sodium repletion treatment was thus an act "by a health care facility or provider in arranging for or providing [COVID-19-related] health care services or medical care to the claimant that resulted in injury to [ ] the claimant." Wyo. Stat. Ann. § 1-1-141(a)(iii)(B).

This logic applies equally to Loginov's subsequent admissions to the Hospital. Loginov claims he returned to the Hospital to treat his worsening slowed speech. But if that symptom were, as he contends, directly caused by the sodium repletion treatment, his readmissions (and subsequent additional treatments) were also caused by the Hospital's treatment of his hyponatremia, which, as we have explained, is a symptom secondary to COVID-19. Accordingly, under any reasonable interpretation of Wyoming law, the Hospital has immunity against Loginov's claims.[8]

---

[8] To the extent Loginov contends the Hospital was negligent in its failure to transfer him to another facility, the Hospital is entitled to immunity on that claim as well. The Hospital attempted to transfer Loginov to one of the larger hospitals in Colorado, South Dakota, Nebraska, Montana, or other cities in Wyoming. But the Hospital could not complete the transfer because each of the facilities it contacted was at maximum capacity with COVID-19-related admissions. This is a clear situation where "the response to COVID-19 reasonably interfered with the arranging

**III.**

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the Hospital.

Entered for the Court

Allison H. Eid
Circuit Judge

---

for or the providing of health care services or medical care to the claimant." Wyo. Stat. Ann. § 1-1-141(a)(iii)(B).